## ASSOCIATED LABORATORIES, Inc., v. FEDERAL TRADE COMMISSION.

### No. 260.

Circuit Court of Appeals, Second Circuit.

July 11, 1945.

Francis Finkelhor, of New York City, for petitioner.

Joseph J. Smith, Jr., of Washington, D. C., and W. T. Kelley, Chief Counsel, and Carl Wheaton, Sp. Atty., Federal Trade Commission, for respondent.

Before L. HAND, AUGUSTUS N. HAND, and FRANK, Circuit Judges.

PER CURIAM.

The petitioner seeks review of an order of the Federal Trade Commission, directing it to discontinue certain forms of advertising, to wit: declaring that its tablets—which go by the name, "Kelp-A-Malt"—will (1) overcome weakness, emaciation, thinness and underweight; (2) will acquire for the user "a well-proportioned body" and a "shapely" figure; (3) will restore health, strength and vigor to those who are "tired" and "run down"; (4) have therapeutic value in cases of "acid stomach," "gas," or "indigestion." The Commission filed its complaint on November 12, 1936, the answer was filed on December 31, 1936; and the first hearing was on June 28, 1938, when, however, little or nothing was done. The proceeding was then allowed to lapse until April, 1942, when the Commission served notice of a hearing on May 27, 1942. Twelve days before the day so fixed, one, Tuvin, the company's president—a lawyer—asked a continuance, because of illness. This the Commission granted, but on July 17 set the hearing for August 17. Tuvin again—July 21—declared that he was too ill, but suggested September 14 as the date, and the Commission set the 15th "definitely." On September 3, and again on September 8, a new attorney of the company, who had been very recently retained, asked a further continuance on the ground that he had not had time to prepare; but the Commission refused his request, began to put in its testimony on the 15th, and completed it at hearings held on the 16th, 17th and 19th. At these hearings the new attorney repeatedly insisted that

he was not prepared to cross-examine the three expert witnesses—who were all physicians—but the examiner as often refused to give him any further time, and held that he had forfeited his privilege by failing to proceed at the close of the direct. However, the cause was continued until December 7, and then and at several later hearings, this attorney was allowed to recall the same witnesses and examine them at large. (This examination occupies about ninety pages of the record; the direct testimony took up only sixty.) Although this was called "direct" examination, the attorney freely examined the witnesses as to all those matters to which they had testified in September.

The case closed before the first of the year, and the Commission filed its findings and order on July 20, 1943. It found that the company had claimed for its tablets those curative powers which the order forbade it to advertise: so far there is no dispute. The last five findings are that the tablets have not in fact the powers claimed; and these findings, the company says, have no support in the evidence. This is so palpably untrue that we shall not stop to consider it; indeed, it is difficult to believe that the assertion can be serious. The more substantial—or perhaps more accurately, the less implausible—grievances are (1) that the company was unfairly pressed on for trial, and (2) that the examiner ruled out evidence relevant to the issues. We have already set out the details as to the first of these, and it must have appeared to any fair-minded person that the claim of being unjustly pressed to trial is utterly without foundation; and that the company was merely trying to put off the evil day. Indeed, the Commission was much more forbearing than it need have been.

Nor is there any reason to suppose that the company moulted a feather in being denied the formal privilege of cross-examination. It is indeed curious that the Commission and the examiner should have denied that privilege even in name; they appear to have supposed that some advantage attached to it different from the privilege, actually accorded the company, of recalling the witnesses and examining them freely on the "direct." Such a notion is not, indeed, uncommon; but it is for the most part an illusion; for, when the examining party is allowed to search the witnesses by leading questions, the only real limitation upon him is that he may not impeach the witness. In the case at bar the company does not even intimate that it could have impeached any of the Commission's experts; and the denial did not prejudice the defence in the slightest.

The second grievance is the exclusion of evidence which the company thought relevant, but which the examiner did not. As has already appeared, the company claimed that its tablets would serve to cure a number of human deficiencies and ailments. The Commission's experts testified that the vitamins and minerals which they contained were too small in quantity to restore such deficiencies, or to cure such ailments; and the only issue was whether that was true. The company offered evidence to prove that the tablets were a "dietary supplement"; that is, that they contained some quantities of those substances which are necessary to a well balanced ration, and which, had they been in greater quantity, might have been restorative or curative, as the company asserted. The examiner was justified in excluding this evidence, although, here too, we should have been better satisfied, had he let it in. Irrelevant evidence will of course inevitably to some extent prolong a trial; but ordinarily that is the only issue at stake in its admission; and it is almost always better to let it in, unless it will consume too much time, or unless it is palpably not offered in good faith. To exclude it is often to invite nice questions of dialectic, which are the curse of the whole law of evidence, and which only serve to confuse those engaged in the trial and provoke idle appeals, as here. However, although, as in forfeiting the company's privilege of "cross-examination," it would have been better to throw open the door, it is perfectly plain that the evidence was in fact irrelevant. The company had not advertised its tablets as useful adjuncts to a proper diet; it had claimed for them powers which they did not possess, and which it really did not try to prove that they possessed.

The appeal is entirely devoid of merit; the company represented the tablets as a panacea, and the Commission showed that they would cure nothing; it was to protect the public from precisely this kind of unscrupulous exploitation to which it so easily succumbs, that the Commission was in substantial part created.

Order affirmed.